

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2006

# Rodgers v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2007

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rodgers v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1652.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1652

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2007
_____

OMALI ADEKA RODGERS,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A97-133-163)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2006

Before: ROTH, FUENTES, and BECKER Circuit Judges.

( Filed: February 1, 2006 )

_____

OPINION

_____

FUENTES, Circuit Judge:

Petitioner Omali Adeka Rodgers ("Rodgers") seeks review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. In so ruling, the BIA affirmed without opinion the findings of the IJ that Rodgers did not have a well-founded fear of future persecution. For the reasons that follow, we deny the petition for review.[1]

## I. Facts

Because we write only for the parties, we recite only the essential facts.

Rodgers is a twenty-seven-year-old single father of two children and is a native and citizen of Guyana. He alleges that, on October 25, 2002, while visiting cousins in Georgetown, Guyana, he and his cousins witnessed an altercation involving gunfire between policemen and members of a gang known as the "Phantom Force." The next day, he read about the incident in the newspaper and learned that the Phantom Force was working with the police. When he returned to his hometown of Linden, he told family and friends about what he witnesses. One month later, approximately ten men stopped him on the street and beat him, telling him to stop talking about what he witnessed in Georgetown. He recognized one of the men as a drug dealer for the Phantom Force in Linden. He was taken to the hospital and reported his beating to the police, who told him

---

[1]Where, as here, the final order of the BIA summarily affirms or defers to the decision of the IJ, this Court "must review the IJ's decision." Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir. 2001).

2

that they lacked sufficient evidence to investigate the matter.

Rodgers's cousins left Guyana two months after they witnessed the shooting, but returned four months later. Rodgers's cousins were killed approximately one month after their return. Rodgers alleges that his cousins were killed in a manner that strongly suggests they were murdered by the Phantom Force. Rodgers left Guyana on April 14, 2003, shortly after the death of his cousins.

Rodgers alleges that the Phantom Force will murder him if he returns to Guyana. He alleges that the Phantom Force will kill him in order to silence him because it is under investigation by the United States Federal Bureau of Investigation (the "FBI"). He believes that the FBI is investigating the Phantom Force because he read this in a December 2002 newspaper in Guyana. He alleges that the Phantom Force would know of his return to Guyana because deportees are well-publicized. At his hearing before the IJ, Rodgers presented his mother, Sandra Rodgers ("Mrs. Rodgers"), as a witness. She corroborated Rodgers's story of the November 2002 beating, and testified that she believed Rodgers would be killed if he returned to Guyana. However, she was unable to corroborate Rodgers's allegations that his cousins had been murdered.

The IJ denied Rodgers's applications for asylum, withholding of removal, and protection under the CAT on September 23, 2003, based on lack of objective evidence demonstrating that Rodgers had a well founded fear of future persecution upon his return to Guyana. The IJ concluded that Rodgers had not been persecuted because of

3

membership in a particular political or social group, or because of his race, religion, or nationality. The IJ also found no evidence to support Rodgers's claim that there was an FBI investigation of the Phantom Force, the Phantom Force's alleged motivation to kill Rodgers. Moreover, the IJ held that the record did not establish that the police were unable or unwilling to protect Rodgers.

Rodgers appealed to the BIA, raising for the first time the argument that he had been persecuted as a member of a particular social group – namely as a witness to the altercation between the Phantom Force and the police. He again argued that the police are unwilling or unable to protect him because the Phantom Force controls the police. The BIA affirmed the IJ's decision without opinion on March 16, 2004.

## II. Discussion

We review the IJ's decision under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We conclude that substantial evidence supports the IJ's conclusion that Rodgers has failed to demonstrate that the Guyanese government is unwilling or unable to protect him.

Where violence is "primarily wrought by fellow citizens" rather than "government action or acquiescience," an application for asylum will be denied. Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2003). An application for asylum based on the action of private citizens must therefore demonstrate that the government condones the conduct or takes no action to stop it. See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001). Here, the

4

evidence presented simply does not compel Rodgers's conclusion that the police worked in tandem with the Phantom Force or that they were unwilling or unable to help Rodgers. The IJ based her decision on articles in the record demonstrating that, although criminal gangs are active in Guyana, the Guyanese government and police are working to control them. Moreover, as the IJ noted, the police did not act indifferently in response to Rodgers's report of his November 2002 beating, but rather were unable to pursue it due to lack of evidence. Therefore, we find that the IJ's decision denying asylum is supported by substantial evidence. For largely the same reasons, we find that substantial evidence supports the IJ's denial of withholding of removal and protection under the CAT.

Rodgers also argues that the BIA erred in affirming the IJ's decision without opinion because he had raised a new argument in his appeal that he was a member of a particular social group. Because we conclude that substantial evidence supports the IJ's holding that Rodgers failed to show the police were unable or unwilling to protect him, Rodgers's argument that, as a witness to the shooting incident, he was a member of a particular social group is immaterial. Even if the BIA were to find that Rodgers was a member of a particular social group, substantial evidence supports the IJ's finding that he has not demonstrated a well-founded fear of persecution as a member of that group.

### III. Conclusion

For all of the foregoing reasons, the IJ's decision was based upon substantial

5

evidence.  Therefore, we will deny the petition for review.

_____